## MARTIN F. HEALY *vs.* STATE OF MARYLAND.

*Statutes; construction; penal statutes; intention of Legislature. Primary Election Law. Acts of 1908, Ch. 122; reports and accounts of treasurers appointed by State Central Committee; sub-treasurers.*

The intention of the Legislature must govern in the construction of statutes.                                    p. 379

Penal statutes are strictly construed, and Courts will not extend punishment to cases not strictly within the language used.                                              p. 379

Courts should not, by narrow and strained construction, exclude from penal statutes cases plainly within their scope and meaning.                                      p. 379

The intention must be sought primarily in the language used; if this be plain and unambiguous, the legislature must be understood to intend what is plainly expressed; if the words seem of doubtful import, it may become necessary to look beyond them to ascertain the legislative mind at the time the law was enacted, what were the circumstances, the evil meant to be redressed and the leading object of the law.  pp. 379-380

Under the Act of 1908, Chapter 122, the accounts of the treasurers appointed by the State Central Committee of any party, or by the members of the State Central Committee for any county or Baltimore City, and of the sub-treasurers appointed by them, must inform the public, not only from whom the money was received, but to whom it was paid and for what purposes applied.                          p. 385

The report of the sub-treasurers is made by the Act a part of the statement and account which the treasurers must file, and such report must be a full, true and detailed account of all the monies received by them, from whom received, and must give the names of the persons to whom the money was paid out.                                           p. 384

*Decided April 5th, 1911.*

Appeal from the Criminal Court of Baltimore City (DUFFY, J.)

. The case was argued before BOYD, C. J., BRISCOE, PEARCE, BURKE, PATTISON and URNER, JJ.

*Wm. F. Campbell,* for the appellant.

*Isaac Lobe Straus, Attorney-General,* and *Charles Morris Howard* (with whom was *Albert S. J. Owens,* on the brief), for the appellee.

BURKE, J., delivered the opinion of the Court.

Martin F. Healy, the appellant, was appointed sub-treasurer for certain precincts of the fifth ward of Baltimore City by John T. Daily, the treasurer of the Democratic State Central Committee for that city, to act as such sub-treasurer in connection with the election to be held in said city and in the State of Maryland on the 8th day of November, 1910. As such sub-treasurer, the appellant received from the said John T. Daily, treasurer as aforesaid, the sum of three hundred dollars to be expended as sub-treasurer before and at said election. On the 18th day of November, 1910, the appellant made his report under oath in writing as sub-treasurer to John T. Daily, treasurer as aforesaid; but neglected to state and specify in detail in his report the names of the persons to whom he paid said sum of money received as aforesaid from John T. Daily, treasurer. He was indicted in the Criminal Court of Baltimore City for failing to state in his said report the names of the persons to whom the money was paid. He demurred to the indictment. The Court overruled the demurrer, and the appellant was convicted and was adjudged to pay a fine of ten cents. We understand it to be conceded that Mr. Healy in neglecting to give the names of the persons to whom he paid the money was acting in good faith, and that he had been advised that he was not required by law to do so. This, no doubt, accounts for the mere nominal fine imposed by the Court.

The question presented by the record is a narrow one, and involves the construction of the *Act of* 1908, *Chapter* 122, known as the Corrupt Practices Act. Does that act require a sub-treasurer to report to the treasurer who appointed him the names of the persons to whom he paid the money received from such treasurer? This is the only question presented by this appeal. A great deal was said in the argument about the general rules of statutory construction, but these are so well settled that we will content ourselves with the following quotation from the opinion of this Court in *State* v. *Archer.* 73 Md. 44: "All agree that the intention of the legislature must govern in the construction of all statutes. This rule lies at the bottom of all statutory construction. The law, it is true, in its tenderness for life and liberty, requires that penal statutes shall be strictly construed; by which is meant that Courts will not extend the punishment to cases not plainly within the language used. At the same time, such statutes are to be fairly and reasonably construed, and Courts will not by narrow and strained construction exclude from their operation cases plainly within their scope and meaning. As stated by *Sedgwick on Statutory Law,* 287, and quoted with approval by BRAMWELL, *B.,* in *Foley* v. *Fletcher,* 28 L. J. Exch. 100: 'The more correct version of the doctrine appears to be that statutes of this class are to be fairly construed and faithfully applied according to the intent of the legislature, without unwarrantable severity ·on the one hand or equally justifiable lenity on the other; in all cases of doubt the Courts inclining to mercy.' After all, then, it is the legislative intent that must govern in the construction of penal as well as all other statutes."

Primarily, the intention of the legislature must be sought in the words employed to express it. If the meaning of the language used be plain and unambiguous the legislature must be understood to intend what is plainly expressed, and nothing then remains but to give the intent effect; if the words of the law seem to be of doubtful import, it may then perhaps become necessary to look beyond them in order to ascertain

what was the legislative mind at the time the law was enacted; what the circumstances were under which the action was taken; what evil, if any, was meant to be redressed, and what was the leading object of the law.

We will now examine the provisions of the *Act of* 1908, *Chapter* 122, so far as they relate to the question before us, in the light of these principles. Section 162 of the act declares that a treasurer, within the meaning of the act, shall include all persons appointed by any political committee or candidate for nomination and election to any public office *to receive and disburse moneys* to aid or promote the success or defeat of any political party, principle or candidate. It further declares that no person shall act as treasurer unless, after his appointment and before the primary or election for which he is appointed, a writing signed by the political committee or candidate appointing him and designating him as such treasurer, shall be filed with the Secretary of State, except that in case the duties of such treasurer shall relate to any county, city, ward or district or district election exclusively, or to any primary election preliminary thereto, such writing shall be filed with the Clerk of the Circuit Court of the county in which such treasurer resides, or with the Clerk of the Circuit Court of Baltimore City, if such treasurer resides in Baltimore City, instead of with the Secretary of State. Every such writing shall designate the particular period, election or primary election within which such treasurership shall continue.

Every political committee is required by the act to appoint and constantly maintain a treasurer to receive, keep and disburse all sums of money or other valuable things which may be collected, received or disbursed by such committee, or by any of its members, for any purposes mentioned in section 162 of the act, or for which such committee exists or acts, and unless such treasurer is first so appointed and maintained it is unlawful for a political committee, or any of its members, to collect or receive or disburse money or other valuable things for any such purposes.

The treasurer appointed under the act by the State Central Committee of any party, and the treasurer appointed in any county or in the City of Baltimore by the members of the State Central Committee for such county or city of any party, and the treasurer appointed by the city committee of any party of the City of Baltimore, before proceeding to act shall give bond to the State of Maryland in such penalty as the committee by whom he shall be appointed shall prescribe, conditioned for the faithful performance of the duties of his office.

Section 163 provides that "All money or other valuable thing collected, received or disbursed by any political committee, or by any member or members thereof, for any of the purposes aforesaid, shall be paid over to and made to pass through the hands of the treasurer of such committee and shall be disbursed by him, and not otherwise; and it shall be unlawful and a violation of this article for any committee or for any member or members of said political committee to disburse or expend money or any other valuable thing for any of said purposes until the money or other valuable thing so disbursed or expended shall have passed through the hands of the treasurer of such committee, * * * ; provided, however, that the treasurer appointed under this act by the State Central Committee of any party, or the treasurer appointed in any county or the City of Baltimore by the members of the State Central Committee for such county or city of any party, or the treasurer appointed by the city committee of Baltimore City of any party, may appoint one sub-treasurer for each voting precinct in the said county or city, as the case may be, which sub-treasurer is authorized to expend such money as may be placed in his hands by the treasurer appointing him for *such purposes* as are lawful under the provisions of this act, and for no other purpose, and it shall be the duty of every such sub-treasurer, within ten days after every election or primary election, to make a report in writing under oath to the treasurer appointing him, stating in detail the amount of money placed in his hands by said treas-

urer and for *what purposes* the said money was expended by him and *to whom paid;* and it shall be the duty of every such treasurer to file the report of every sub-treasurer appointed by him along with and *as a part of the account and statement required to be filed by such treasurer* under the provisions of section 167 of this act."

Any person nominated as a candidate for public office, or a candidate for nomination for public office, may make a voluntary payment to any treasurer; but the payment, expenditure, promise and liability of any candidate before nomination or election or both may make is expressly limited by the act, and no person, other than a treasurer or political agent, shall pay any of the expenses of any election or primary election, except that a candidate may pay his own expenses for postage, telegrams, telephoning, stationery, printing, expressage, traveling and board.

By section 167 of the act, it is made the duty of every treasurer and every political agent, within twenty days after every election or primary election "to file a full, true and detailed account and statement, subscribed and sworn to by him before an officer authorized to administer oaths, in the office of the Clerk of the Circuit Court of the county in which such treasurer or political agent resides, or in the office of the Clerk of the Circuit Court of Baltimore City, if such treasurer or political agent resides in said city, which statement shall include the amount of money or property in each case received or promised, *the name of the person from whom it was received,* or by whom it was promised, or valuable thing given or promised, or liability of any sort incurred, *the name of the person to whom such expenditure, gift or promise thereof was made,* or to whom such liability was incurred, *and shall clearly state the purpose for which such money or property was so expended,* given or promised, or for which such liability was incurred, separating expenditures, gifts and liabilities for elections and primary elections * * * . Every treasurer and political agent and every person who shall at any time act as treasurer or political agent, shall

keep detailed, full and accurate accounts in a proper book or books, to be called 'Account Books', to be provided and preserved by him, of all moneys or valuable things received by or promised to, and of all expenditures, disbursements and premises of payments or disbursements of money or valuable things made by any political committee, or any of its officers or members, or by any person acting under its authority or on its behalf, or by such treasurer or political agent, and setting forth in such statement and accounts the sum or valuable things so received, on disbursed, or promised, as the case may be, and the date when, *the person from whom received or promised, or to whom paid or promised,* as the case may be, and the *object and purposes* for which said sum or other valuable things was received, or disbursed, or promised, as the case may be."

Section 166 declares *the purposes* for which a treasurer or political agent may lawfully expend money received by him · First, for hiring halls and music for the conventions, public meetings and public primaries and for advertising the same; second, for printing and circulating political articles, circulars, pamphlets and books; third, for printing and distributing sample or specimen ballots and instructions to voters; fourth, for renting rooms and headquarters used by political committees; fifth, for compensating clerks, stenographers, · typewriters and other assistants employed in the committee · rooms, and also for challengers, watchers and messengers employed in the registration rooms, in the voting rooms and at the polls; sixth, the traveling and other legitimate expenses of political agents, committees and public speakers; seventh, for necessary postage, telegrams, telephoning, printing expenses and conveyance charges for carrying persons to and from the polls, or to and from the office of registration; eighth, the costs and expenses of messengers sent by direction of the chairman of the State Central Committee of any political party in connection with party matters or interests, and also the costs and expenses of any person or persons summoned by or at the instance of the chairman of the State

Central Committee of any political party to the committee's headquarters or offices in connection with party matters or interests, and also for the accommodation and entertainment of such persons; ninth, all expenses incurred by or under the authority of the chairman of the State Central Committee of any political party in providing accommodation and entertainment for the members of the State Central Committee or for the transportation of such members, when assembling for any meeting of said committee or visiting the headquarters of said committee in connection with party matters or interests. No treasurer or political agent shall incur any expense or liability or make any payment for any purpose not authorized by this section, and every liability incurred and payment made must be at a rate which is proper and reasonable and fairly commensurate with the service rendered.

These provisions are all that need be stated in order to dispose of the contention made by the appellant, which is, that a sub-treasurer is not required to disclose the names of the persons to whom he has paid money; but that he has fully and sufficiently complied with the requirements of the act when he has stated in his report that he has paid the money received from the treasurer to challengers, watchers, messengers, etc., merely designated them as a class. The obvious answer to this contention is that such a report merely states the *purposes* for which the money was expended, whereas the law expressly requires not only *"for what purposes* said money was expended, but to *whom paid."* The report of the sub-treasurer is made by the act a part of the statement and account which the treasurer is required to file, and his account must be a full, true and detailed account of all money received by him, from whom it was received, and the names of the persons to whom such expenditures, etc., were made. Manifestly, the treasurer could not comply with the duty imposed upon him by the act in this respect, unless the report of the sub-treasurer specified the names of the persons to whom he expended the money placed in his hands by the treasurer. It would seem to be reasonably clear that it was

the intention of the legislature that the public should be informed by the accounts of the treasurer and sub-treasurer not only from whom the money was received, but to whom it was paid and for what purposes it was applied. This intention could not be gratified unless the sub-treasurer is required to give the names of the persons to whom he has expended the money received from the treasurer. The act was passed to limit the expenditure of money by candidates for public office, and to minimize the corrupt use of money in politics. It is a salutary measure, and, if rigidly enforced, would vastly improve political conditions; but if the construction contended for by the appellant were adopted, the main purpose of the act, which contains the promise and assurance of better things in the political life of the State, might be in a large measure defeated by the practice of the very acts which it was enacted to prohibit. For these reasons, and in accordance with the *per curiam* order filed March 2nd, 1911, we affirm the judgment appealed from.

> *Judgment affirmed, the appellant to pay the costs in this Court.*