STATE OF MARYLAND *v.* GEORGE W. PAGE.
[No. 87, October Term, 1932.]

*Decided December 24th, 1932.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, and DIGGES, JJ.

*William L. Henderson, Assistant Attorney General,* and *James Clark, State's Attorney for Howard County,* with whom were *William Preston Lane, Jr., Attorney General, William A. Huster, State's Attorney for Allegany County,* and *Jerome A. Loughran, Special Assistant State's Attorney for Howard County,* on the brief, for the appellant.

*William L. Rawls* and *Hilary W. Gans,* with whom was *A. Taylor Smith* on the brief, for the appellee.

OFFUTT, J., delivered the opinion of the Court.

George W. Page, bank commissioner of Maryland, was indicted in the Circuit Court for Howard County for malfeasance, misfeasance, and nonfeasance in office. The case was, upon the suggestion and affidavit of the defendant, removed to the Circuit Court for Allegany County for trial. That court sustained a demurrer to the indictment, judgment for the defendant on demurrer was entered, and from that judgment the State has appealed.

The indictment contains six counts, the opening paragraphs of which are identical. The first count alleges the appointment and qualification of the defendant as bank commissioner, that the Washington Trust Company of Maryland was a banking institution subject to the provisions of Code, art. 11, engaged in a general banking business, with its principal office in Howard County, and that the Central Trust Company of Maryland was likewise a banking institution subject to the same statutory provisions. It then states that on June 23rd, 1901, at Howard County, the defendant, "in violation of the trust reposed in him by virtue of his said office, did, unlawfully, wilfully, knowingly and negligently advise the said Washington Trust Company of Maryland, a

corporation as aforesaid, to transfer all its assets to the said Central Trust Company of Maryland, a corporation as aforesaid, and accept in settlement therefor the promise and agreement of the said Central Trust Company of Maryland, a corporation as aforesaid, that it, the said Central Trust Company of Maryland, a corporation as aforesaid, would assume and pay in full all the liabilities of the said Washington Trust Company of Maryland, a corporation as aforesaid, to its depositors and creditors, without having before him the information necessary to enable him to determine whether said transfer could be made as aforesaid with safety to the said Washington Trust Company of Maryland, a corporation as aforesaid, and the depositors and stockholders thereof, when such information would have disclosed that the said Central Trust Company of Maryland, a corporation as aforesaid, was not in a position to assume and pay in full said liabilities of the said Washington Trust Company of .Maryland, a corporation as aforesaid, that the then total value of the assets of the said Central Trust Company of Maryland, a corporation as aforesaid, was then less than the then total liabilities thereof to its depositors and creditors, and that said transfer could not be made with safety to the said Washington Trust Company of Maryland, a corporation as aforesaid, and to the depositors and stockholders thereof. And that he, the said George W. Page, did thereby unlawfully, wilfully, knowingly and negligently violate and betray the duties of his said office and the trust and confidence in him therein and thereby reposed; contrary to the form of the Act of Assembly in such case made and provided, and against the peace, government and dignity of the State."

The second count differs from the first, in that it charges that the advice was "unlawfully, wilfully and knowingly" given, when by the exercise "of reasonable and proper care and diligence, he, the said George W. Page, could and should then and there have well known" the condition of the Central Trust Company and that the defendant "did thereby unlawfully, wilfully and knowingly violate and betray" the duties of his office.

The third count charges that the defendant did "unlawfully, wilfully, recklessly, falsely and fraudulently represent and state" to the Washington Trust Company and to its president that the Central Trust Company was a safe, strong, and well-managed bank, "in order to induce, and did thereby induce," the Washington Trust Company to enter into the arrangement with the Central Trust Company described in the preceding counts, without having before him the information necessary to enable him to determine "whether the transfer could be made with safety to the Washington Trust Company, when" such information would have shown that it could not be so made, and it concludes by charging that the defendant "did thereby unlawfully, wilfully, knowingly and negligently" violate and betray the duties of his office.

The fourth count differs from the third, in that the misfeasance charged was that of making the false statement when the defendant, by the exercise of "reasonable and proper care and diligence," could and should have known that it was false, and it concludes by charging that the defendant "did thereby unlawfully, wilfully and knowingly violate and betray the duties of his said office."

The fifth count charges that the defendant "did unlawfully, wilfully, knowingly and negligently permit" the Washington Trust Company to consummate the transaction, without having before him information necessary to enable him to determine whether the transfer could be made with safety to the Washington Trust Company, when such information could have been obtained by him by the exercise of reasonable care and diligence, and would have disclosed that it could not be so made, and it concludes that the defendant did "thereby unlawfully, wilfully, knowingly and negligently violate the duties of his office. * * *"

The sixth count charges that the defendant did "unlawfully, wilfully and knowingly permit the transfer when by the exercise of reasonable and proper care and diligence, he" could and should have known that the Central Trust Company was not in a position to perform its part of the agreement.

The question presented by the appeal is whether any one of these counts charges an offense indictable either under the statute or at common law. In considering that question, it may be premised that mere adjectival or qualifying words cannot in themselves supply the omission of substantive words to which the quality indicated by the adjective is attributed. Which is no more than to say that the facts out of which the supposed illegality arises are essential to the description of an offense, and that it is not sufficient to characterize an act as willful, felonious, unlawful, or the like, without stating facts which give it that character. Or, as stated in 2 *Hawkin's Pleas of the Crown,* 310, "it is generally a good rule in indictments as well as appeals, that the special manner of the whole fact ought to be set forth with such certainty, that it may judicially appear to the court, that the indictors have not gone upon insufficient premises."

The burden of the charges severally set forth in the first four counts of the indictment is that Page, being then and there the bank commissioner of Maryland, charged with certain powers and duties in respect to the administration of the provisions of Code, art. 11, did knowingly, wilfully, falsely, unlawfully, recklessly, negligently, and fraudulently advise the Washington Trust Company, or give it information which induced it to enter into an agreement whereby it transferred all its assets to the Central Trust Company, on the promise and agreement of that company to pay in full all liabilities of the Washington Trust Company to its depositors and creditors, at a time when Page had no knowledge at all upon the subject, but when he could by the exercise of ordinary care and diligence have known that the Central Trust Company could not perform its premises. It is nowhere alleged in any of those counts that Page did in fact know that the Central Trust Company could not perform what it promised, but the essential thing charged is that Page gave the information or advice when he did not know whether his statements were false or true. There is no allegation that in giving the advice or the false information he had an evil or corrupt purpose, for while in each of those counts such an

inference might be drawn from the use of such words as "wilfully," "fraudulently," "falsely," and the like, used to qualify the words "advise" and "represent and state" in those counts, it is completely negatived by other allegations which follow, such as that the information or advice was given "without having before him the information necessary to enable him to determine whether such transfer could be made as aforesaid," or that "by the exercise of reasonable and proper care and diligence he could and should have known" that the Central Trust Company was not in a position to perform its promises, and in each instance the count concludes with the allegation "that he * * * did thereby * * * violate and betray the duties of his said office"; the later allegations being used as an innuendo to expose and make manifest the meaning and significance of what had gone before. So that, considered as a whole, no one of these counts charges anything more than that Page gave information and advice, which were false in fact, but which he did not know to be false, because he lacked information which he could by the exercise of reasonable care and diligence have procured, and that such information and advice were given to induce the Washington Trust Company to transfer its assets to the Central Trust Company.

There is no provision of the Banking Act, Code, art. 11, which by any reasonable construction imposes upon the bank commissioner any duty to advise any banking institution operating under that article in respect to a sale in whole or in part of its assets to another banking institution operating under the same article, or to give to any such institution contemplating such a transaction any information as to the financial worth or responsibility of the proposed purchaser. But, on the contrary, he is bound by oath to keep secret all facts and information obtained by him in the examination of banks subject to his supervision, and, if he shall disclose the name of any debtor of any such institution, or anything relative to its private accounts or transactions, or any fact discovered in the course of his examination of its affairs, he may be subjected upon conviction thereof to forfeiture of his office and fine or imprisonment or both. Code, art. 11, sec. 14. It

is intimated, in one of the briefs filed for the State, that the provisions of the article which require or authorize the commissioner to examine the banks under his supervision (section 6), to summon, swear, and examine witnesses as to the condition of any such banks (section 7), to demand reports (section 56), and to examine each statement received (section 13), and, with the consent of the Governor, to take possession of any such institution which is conducting its business "in an unsafe, or unauthorized manner" (section 9), imposed upon him some duty in respect to advising the Washington Trust Company concerning the transaction with the Central Trust Company. But those and other cognate sections of the article are without relevance to the question here presented, for the defendant is not indicted for any failure of duty with regard to the affairs of the Central Trust Company, but for ignorantly and recklessly giving bad advice and false information as to the condition of the Central Trust Company, when by ordinary care and diligence he might have learned the truth but was forbidden by the law to disclose it.

Some significance is also attached to section 59, which prohibits the consolidation of banks without the consent of the commissioner. But that section is not at all inconsistent with section 14, for it does not contemplate that the commissioner shall disclose any information obtained in his official capacity, but rather that he shall use such information for his own guidance in giving or withholding his consent in respect to a proposed consolidation; the power to permit or to veto a transaction being essentially different from a duty to give advice in respect to it. His duty was to approve or disapprove what others had decided, not to aid them in reaching a decision. Moreover, while the article gives the commissioner supervisory power over the consolidation of banks subject to its provisions, it gives him no such power over a sale of its assets by such a bank. And, while such a sale as that described in the indictment in some respects effected a practical merger of the institutions, it was not a technical consolidation, and, since the commissioner's power was wholly statutory, he had no authority as commissioner to prevent it, un-

less it was made as one step in a proposed plan of consolidation. It does not appear from the indictment that it was so made, and section 59 imposed upon the defendant no power or duty to approve or disapprove the transaction, or to give advice in respect to it.

It is also contended that, as the statute forbids the commissioner from disclosing any fact concerning the business or condition of a bank under his supervision, by fair implication, by force of the same provisions, it forbids him from assuming to give information of that character which he does not possess, as well as from stating as true alleged facts of that nature which he could or should know to be false. But to adopt that conclusion would be to promulgate by judicial construction what the Legislature might have done, but did not do, by legislative enactment. And, while the courts may not by strained or narrow construction thwart the legislative will, neither will they, in the construction of a criminal statute, extend its scope to cases not plainly within the language used. *Healy v. State,* 115 Md. 377, 80 A. 1074. To hold that, when the Legislature condemned the disclosure of certain facts, in the possession of the commissioner, it intended to include in the condemnation statements by the commissioner which involved no such disclosure, would be mere judicial usurpation of the legislative function. These counts therefore fail to allege any facts showing a breach of any duty imposed upon the defendant by the statute.

But it is contended that, even if that is so, nevertheless, if the defendant, acting under the color of his office, did an act which, although not within the scope of his official duties, was wrongful, he is subject to criminal prosecution. But a sufficient answer to that contention is that there is nothing in these four counts from which it can be said that Page, when he is said to have given the advice and information, was acting, or assuming to act, in his official capacity. They do allege that at the time of the alleged wrongful act Page was bank commissioner, but they do not allege that they were done by him as bank commissioner, and the distinction is vital. For, unless connected in some way with

the administration of his official duties, the acts of a public official do not differ in their incidents and consequences from similar acts done by a private person. The question of the negligence *vel non* of one of the actors in an automobile collision, or the responsibility of a party to a contract, or the culpability of one accused of assault, is in no wise affected by the fact that one of the parties is a public official, unless the act charged is in some way connected with the duties of his office. Moreover, the counts do not charge that Page exceeded the duties of his office, or that he used its powers to coerce or oppress the Washington Trust Company, but that it was his duty to give good advice and true information, and that he violated that duty by giving bad advice and false information. But, since it was not his official duty to give any advice at all, and since it is not charged that what he did was done in his official capacity, those counts fail to state a criminal offense either under the statute or at common law.

The cases of *Hiss v. State*, 24 Md. 556; *State v. Leach*, 60 Me. 58, and *State v. Hatch*, 116 N. C. 1003, 21 S. E. 430, cited by appellant, are not all in conflict with that conclusion. In *Hiss v. State*, a justice of the peace was indicted for refusing to deliver to one known to him to be the rightful owner certain promissory notes which, while acting in his official capacity, he had taken from one charged with a crime. He had received the notes in the course of and while actually exercising his judicial functions, and whether he was obliged to receive them was immaterial, since they came into his possession by reason of the power which his office gave him, rightfully or wrongfully exercised, and his plain official duty was to deliver them upon demand to the one known to him to be the rightful owner. His refusal to do that under those circumstances was held to be a misdemeanor.

In *State v. Leach*, a register of deeds falsely certified over the seal of his office that certain property was unincumbered when he knew the contrary to be true.

In *State v. Hatch*, commissioners, apparently authorized to sell the same, sold county property at a grossly inadequate

price. They were indicted and convicted of misconduct in office.

In each of those cases the wrongful act was done either under color of the office or by virtue of the office, and was an abuse or a wrongful use of the office itself, amounting to misconduct in office, and punishable as such as a misdemeanor at common law. But in this case there is no allegation that what Page did he did either under color of, or by virtue of, his office, but, on the contrary, when the whole statute is considered, it does appear that Page could not as bank commissioner have given the advice or information charged in the indictment, if he had received it as bank commissioner, without violating the provisions of article 11, sec. 14. Nor could he have acted in concert with the officials of the Washington Trust Company to violate that section without being guilty of criminal conspiracy. *State v. Buchanan,* 5 H. & J. 317. But, since the indictment fails to allege that in giving the advice he did act as bank commissioner or that he did disclose information received in his official capacity, no such inference should be drawn.

The fifth and sixth counts charge that the defendant violated the duties of his office, because he "permitted" the Washington Trust Company to transfer all its assets to the Central Trust Company on its promise and agreement to pay in full the liabilities of the Washington Trust Company. But for reasons which need not be repeated, no duty rested upon him with respect to that transaction, his permission was not required, nor was he authorized by the statute to give or to withhold it. For, as stated in the State's brief: "To argue that it is the duty of the Commissioner to advise the prospective purchaser or seller concerning the advisability of the proposed transaction is equivalent to saying that the Commissioner must violate the provisions of section 14, and is therefore wholly untenable."

Finding no error in the ruling on the demurrer to the indictment, the judgment appealed from will be affirmed.

*Judgment affirmed.*