EMORY L. COBLENTZ *v.* STATE OF MARYLAND.

[No. 21, January Term, 1933.]

559

560

*Decided April 20th, 1933.*

The cause was argued before BOND, C. J., and PATTISON, ADKINS, OFFUTT, and DIGGES, JJ.

*George M. Brady* and *Leo Weinberg*, with whom were *William Curran* and *David A. Robb* on the brief, for the appellant.

*G. C. A. Anderson, Assistant Attorney General,* and *James Clark, State's Attorney for Howard County,* with whom were *William Preston Lane, Jr., Attorney General, William A. Huster, State's Attorney for Allegany County,* and *Jerome A. Loughran, Special Assistant Counsel,* on the brief, for the State.

BOND, C. J., delivered the opinion of the Court.

The appellant was indicted by a grand jury of Howard County, and tried and convicted in Allegany County, under article 11, section 58, of the Code, on a charge that, as president of a banking institution, the Central Trust Company of Maryland, he had accepted a deposit of money when the institution was, to his knowledge, insolvent. Before any pleading on his behalf the case was, upon his application, removed from Howard County to Allegany County; and all pleadings were filed in the latter jurisdiction. On the appeal, a number of questions have been presented for decision, the most important, as this court views them, being three: That of the effect on an indictment of the presence with the grand jury, during their inquiry prior to taking their vote, of an attorney who represented plaintiffs in civil litigation against the banking institution; that of the effect of membership on the grand jury of persons hostile to the defendant; and, a third, that of the meaning of acceptance of deposits under the statute. These are questions of general bearing, the first two involving the composition and methods of the state's machinery for enforcement of the criminal law, and, the third, the principles which under the statute law of the state must determine the criminal liability of any bank officer in the state whose institution passes into the control of the bank commissioner and fails to pay its depositors in full. Actions taken or methods followed in one bank cannot, of course, be allowed to settle the law for all in order to suit the case of that one bank, and, therefore, the court is first to ascertain the principles as they must be applied for any one who may come before the courts now or hereafter, and then to make application of them to rulings brought up for review in the one case.

The question of the effect of the admission of the attorney into the grand jury proceedings was raised by a plea in abatement to the indictment found, and a demurrer to the sufficiency of it on the grounds that the presence of the attorney under the circumstances described in the plea would not be sufficient to invalidate the indictment, and that the plea was

filed too late to present the question whether it would be. The demurrer was sustained. The second ground is considered first, because, if the plea was filed too late for consideration, there is no necessity of discussing the merits of the objection. That it was too late is a conclusion based on the decision in *Hooker v. State*, 98 Md. 145, 56 A. 390, 392, that, after removal of a criminal case from the county of indictment to another county, although before any pleas were filed, the court of the second county could not entertain a motion to quash the indictment on the ground that a majority of the grand jury had not concurred in finding it. The opinion and reported arguments in that case disclose that the court was brought to its conclusion upon reasoning that the attack in that instance amounted to a falsification of the record recital that an indictment had been found. The court quoted, as the rule of law applicable, that "the record of a court as to the impaneling and proceedings of a grand jury and the finding of an indictment, like other records, proves itself, and is of such validity that, as a general rule, no fact can be averred against it." But the court added that thus to impeach the record in the second county, Howard, "would not be in accord with the principle of law that requires one court to respect the records of another, which had acted within its jurisdiction, and if in any instance an indictment is to be impeached by grand jurors, it should at least be done in the court where it was found. The provision in the Constitution that the court to which the record is transmitted shall hear and determine the same in like manner as if such indictment had been originally instituted therein, ought not to be construed to give the court to which the case is removed such power over the record of the other court as is sought in this case, and we are of opinion that even if it could be conceded that the Circuit Court of Frederick County could properly have inquired into the matters attempted to be raised by the motion to quash, the court for Howard County was right in refusing to do so." It is upon the last-quoted statement that the argument in this case is rested.

This court is of opinion, however, that the beneficient purpose of the Constitution (article 4, section 8) to secure for persons accused of crime fair trials on charges against them so far as removal can accomplish it does not permit a construction that a defendant must file in the court, from which it seems fair to remove his case, any pleas that question the propriety of proceedings in the grand jury room. Such a construction would seem to be opposed to the purpose of the constitutional privilege, and it would be opposed to the practice, for pleas of that kind are commonly withheld until after removal. *State v. Scarborough,* 55 Md. 345; *Cooper v. State,* 64 Md. 40, 20 A. 986; *Miller v. State,* 76 Md. 264; *State v. Keating,* 85 Md. 188, 36 A. 840. In those cases attacks on indictments because of the constitution of the grand jury, or of defects in its proceedings, were overruled in courts to which the cases had been removed, in most instances because made after pleading to the merits, but it was in each case assumed that the trial court could entertain the plea or motion in the absence of the difficulty pointed out. A distinction between the grounds of attack in those cases, and that in *Hooker v. State,* would seem difficult to draw, obscure, without practical advantage, and likely to confuse. The statement quoted from *Hooker v. State* was not necessary to the decision in that case, and in the opinion of this court should not be permitted to control the decision on the demurrer in this case; and, so far as it might tend to do so, it is now overruled. Giving it the effect contended for, it would require that a defendant must, before removing a case, present, and have tried out, all pleas or motions denying the valid finding of the indictment against him, even when the charge is murder and the Constitution gives him an unqualified privilege of removal; and that is a result which we think cannot be sustained. We conclude, therefore, that the court below was required to decide upon the validity of the plea in this case, and that it was error to sustain the demurrer to it.

On the merits of the objection raised in the plea, this court is of opinion that the presence of an attorney as stated must have the consequence of invalidating the indictment upon a

plea seasonably filed. The plea alleged these facts. The Central Trust Company had purchased on June 30th, 1931, assets of the Washington Trust Company, situated in Ellicott City, and had assumed the liabilities to its depositors. On November 28th, 1931, after the Central Company had been taken in charge by the bank commissioner as receiver, a proceeding was filed by Jerome A. Loughran and others, as attorneys for the Washington Company and certain of its depositors and stockholders, seeking to have the transaction set aside and annulled upon a charge of fraud; that on March 2nd, 1932, a bill of complaint in equity was filed by Mr. Loughran and others, making charges substantially the same as those contained in the indictments returned on February 29th, 1932, two days earlier; that Mr. Loughran was private attorney of the Washington Company, and not a member of the grand jury, but was permitted to be with the grand jury, while it was conducting its inquiry and investigation, by an illegal order of court appointing him (Mr. Loughran) "special assistant counsel for the State of Maryland," to aid in the inquiry and examination into the subject-matter of the indictments; and, finally, that Mr. Loughran, privately employed as stated, did hear, see, and ascertain the proceedings of the grand jury in connection with the indictments, except at the time of the grand jury's vote, all to the prejudice and detriment of the defendant. The following statutory provisions determine the legality and effect of an order of court such as is outlined in the plea, for except under their authority no attorney other than the state's attorney or his regular official assistants could be permitted to attend in the grand jury room. Under section 27 of article 10 of the Code, a court may appoint an attorney to take the place of a state's attorney when necessary because of absence, sickness, resignation, or death of the state's attorney, the appointee to qualify and be compensated as a regular state's attorney; but this section cannot be involved in the present case, because there was no absence, death, or disability of the state's attorney regularly serving, and it does not fit the description of the order passed. *State v. Heaton,* 21 Wash. 59, 56 P. 843; *Sayles v. Genesee*

*Circuit Judge,* 82 Mich. 84, 46 N. W. 29. It is section 7 of article 26 that provides for the appointment of "assistant counsel for the State, to aid in the trial of criminal or other State cases in said courts, whenever in the judgment of the court in which any such case is pending public interest requires it."

The section last quoted would make it legal for the court to appoint assistant counsel in a pending case to aid in the trial; but in our opinion appointment under its authority could give the appointee none of the power of a state's attorney to enter and be present in the room with the grand jury while they are investigating a case with a view to possible indictment. So it was held with respect to a federal statute empowering the Attorney General of the United States to appoint an attorney "to assist in the trial of any case in which the Government is interested." (Rev. St. sec. 363 and 34 Stat. 816 [5 U. S. C. Ann., secs. 310, 312]). The entry of an appointee under that statute into a grand jury room was unauthorized and unlawful. *United States v. Rosenthal* (C. C.), 121 Fed. 862; *United States v. Virginia-Carolina Chemical Co.* (C. C.), 163 Fed. 66; *United States v. Heinze* (C. C.), 177 Fed. 770; *United States v. Rubin* (D. C.), 218 Fed. 245. See Act of Cong. June 30th, 1906, ch. 3935 (5 U. S. C. Ann., sec. 310); and *United States v. Huston* (D. C.), 28 Fed. (2nd) 451, 453. Aid in a trial might well be construed to include preparation for the trial by collecting evidence and otherwise, but to include attendance at the grand jury proceedings would require a liberality of construction that seems opposed to the rigorous policy of exclusion followed in the effort to insure against publicity and interference in grand jury proceedings; in that respect no liberality is allowed. Even to make an exception for the admission of stenographers to aid grand juries in this state special statutory provisions have been exacted. Acts 1900, ch. 164, Baltimore City Charter, sec. 604C. Acts 1920, ch. 151, Baltimore County Code, art. 3, P. L. L., sec. 104. And the greatest degree of secrecy is enjoined by these statutes in express terms. To construe attendance at grand jury sessions of attorneys appointed to aid would

also be opposed to the letter of the statute under considera-
tion, for the attorney is by the letter to be appointed only
when the case is pending in the court, and according to the
ordinary acceptation none is pending as yet when the grand
jury is investigating a charge.

The present plea does not set forth the relationship, if there
was any, between the charge of fraud on which the attorney's
civil proceeding was first based and the charge in the indict-
ment, but it does allege that the second bill filed by him
contained substantially the same charges as those in the in-
dictment, which resulted two days before, from the grand
jury investigation which he attended. There is alleged,
therefore, a degree of identity between interests and grounds
of action of private persons whom Mr. Loughran represented
as attorney, and those involved in prosecution under the in-
dictment found. It would, according to the allegations, be in
furtherance of the interests of the clients to have these charges
maintained. Actual effort on Mr. Loughran's part to influ-
ence action by the grand jury is not alleged, and there is no
allegation of actual injury, except the general one that his
presence in the grand jury room was to the prejudice and
detriment of the defendant.

The grand jury is an accusing body, and not a judicial
tribunal; and it acts upon knowledge possessed by its mem-
bers from any source, whether from witnesses brought before
it, or from information gained before its sessions. "In this
state they have plenary inquisitorial powers, and may law-
fully themselves, and upon their own motion, originate
charges against offenders, though no preliminary proceedings
have been had before a magistrate, and though neither the
court nor the state's attorney has laid the matter before them."
*Blaney v. State,* 74 Md. 153, 21 A. 547, 548; *In re Grand
Jury Report,* 152 Md. 616, 137 A. 370. And their oath re-
quires them to present all things truly as they come to their
knowledge, according to the best of their understanding. But
it is an inflexible requirement that their investigations shall
be carried on secretly and free from outside interference or
influence; and great care is taken that they shall be so carried

on. The purposes of this are many. Freedom of inquiry is to be preserved, and at the same time individuals whose conduct may be investigated, but against whom no indictment may be found, are to be protected from disrepute, and all individuals are to be protected from one-sided presentations of unfavorable evidence, without opportunity to reply, before any one present unnecessarily. See *In re Grand Jury Report,* 152 Md. 616, 631, 137 A. 370. This protection from one-sided hearings has, indeed, been regarded as demanded in constitutional provisions for inauguration of criminal proceedings by indictment. *Comm. v. Harris,* 231 Mass. 584, 121 N. E. 409. It is, moreover, "inherent in the grand jury system with all the force of a statutory enactment." *United States v. Edgerton* (D. C.), 80 Fed. 374, 375. And it is found embodied in the familiar grand jury oath that the members sworn shall keep secret the counsel of the state, their fellows, and their own, and shall not present any one for envy, hatred, or malice, nor leave any one unpresented for fear, favor, or affection, or hope of reward. The rule is not merely a remedial one, that injury shown to have been sustained by the accused in a particular case shall be remedied, but also a preventive one, which interposes in advance for private benefit and public benefit as well. Discriminations between degrees of departure from it are difficult to manage, and, unless the bar is maintained in all cases, it can hardly have any effective existence. Therefore the law must act upon the existence of opportunity rather than await proof of abuse, as in cases of communications with petit jurors, and also in civil cases of conflicts of interests of agents, attorneys, or trustees. *Mason v. Martin,* 4 Md. 124; *Gaither v. Myrick,* 9 Md. 118, 143; *Derlin v. Derlin,* 142 Md. 352, 121 A. 27. "Their findings must be their own, uninfluenced by the promptings or suggestions of others, or the opportunity thereof." *Lewis v. Board of Commrs. of Wake County,* 74 N. C. 194. Some cases of accidental departure may perhaps be ignored, but we have no occasion now to consider those.

An objection to an indictment on such grounds has been made in only one case in this court before the present one.

*Cochran v. State,* 119 Md. 539, 556, 87 A. 400. In that, for investigation of charges of miscounting election ballots, the president of the board of police commissioners was brought before the grand jury to produce the ballot box in his custody, and a member of the board of election supervisors was present to produce the keys, returns, and talley sheets of the precinct and ward concerned. Both testified in the trial court that they did not participate in the grand jury's counting of the ballots, and that the grand jury did not deliberate upon any questions during their presence. The custodians of evidence merely came with the evidence; and that was found unobjectionable. The case is cited elsewhere as an illustration of an exception made of necessity and without danger; and it does not reach the ground of the objection here. *Lebowitch v. Commonwealth,* 235 Mass. 357, 126 N. E. 831.

But there are many decisions by courts of other states and of the United States on the same objection. Differences of opinion have been expressed, but the weight of authority now seems in accord with the view we have stated. "The right of the citizen to an investigation by a grand jury pursuant to the law of the land is invaded by the participation of an unauthorized person in such proceedings, be that participation great or small. It is not necessary that participation should be corrupt, or that unfair means were used. If the person participating was unauthorized, it was unlawful." *Latham v. United States* (C. C. A.), 226 Fed. 420, 424. "If the presence of an unauthorized person in the grand jury room may be excused, who will set bounds to the abuse to follow such a breach of the safeguards which surround the grand jury. * * * It is beyond question that no person, other than a witness undergoing examination, and the attorney for the government, can be present during the sessions of the grand jury. The rule is inherent in the grand jury system with all the force of a statutory enactment. The cases where bailiffs and stenographers have on occasions been temporarily present in the grand jury room are only apparent exceptions. The rule, in its spirit and purpose, admits of no exception."

*United States v. Edgerton* (D. C.), 80 Fed. 374, 375. In a case previously cited, *United States v. Rosenthal* (C. C.), 121 Fed. 862, the court held an indictment void because of the presence in the grand jury room of an attorney appointed by the Department of Justice under the supposed authority of a statute like that in this state for appointment of an assistant for the trial, and said, page 873 of 121 Fed.: "Every citizen is amenable to the secret inquisition of the grand jury, and he may demand justly that his essential rights be guarded by the wholesome preservation of settled systems and policies, that give greater certainty to legal proceedings, and fix on the designated prosecuting officer of the locality inevitable accountability for what is done or omitted. The inconvenience of resubmitting the matter to the grand jury is temporary; the injustice of denying the defendants investigation pursuant to the law of the land would be perpetual." And supporting the same conclusion are the cases of *United States v. Virginia Carolina Chemical Co.* (C. C.), 163 Fed. 66; *United States v. Heinze* (C. C.), 177 Fed. 770; *Hartgraves v. State,* 5 Okl. Cr. 266, 114 P. 343; *Wilson v. State,* 70 Miss. 595, 13 So. 225; *State v. Wetzel,* 75 W. Va. 7, 83 S. E. 68; *Lewis v. Board of Commrs. of Wake County,* 74 N. C. 194; *Durr v. State,* 53 Miss 425; *Comm. v. Harris,* 231 Mass. 584, 121 N. E. 409; and *Lebowitch v. Comm.,* 235 Mass. 357, 126 N. E. 831. And see notes, 33 L. R. A. (N. S.) 568; Ann. Cas. 1912D, 184; Ann. Cas. 1918A, 1080.

In some of the cases cited, there was a more clearly marked conflict of interest of an attorney in attendance than is alleged in this plea; in some of them attempts to influence the decision of the grand jury were made evident, and none is expressly pleaded here; but the same fact of unlawful presence in the room existed, and this case, too, involves the added feature of the conflict of interest, so that departure from the policy of the law was the same in its essentials. It was not necessary to plead and show actual injury from the conflict of interest. "The contention of the Commonwealth

that the burden is upon the defendant to show he was injured by action of the grand jury," said the Massachusetts court, "is unsound, because in the nature of things it would be impossible to prove the fact if true before the jury trial and because the wrong complained of is the violation of a substantial right guaranteed by the Declaration of Rights, and is not a mere failure of the grand jury to observe technical requirements and formalities." *Comm. v. Harris,* 231 Mass. 584, 121 N. E. 409, 410.

A second objection advanced in the plea was that nine members of the grand jury were disqualified from serving in the investigation and from finding this particular indictment because they had been subject to losses as depositors in the Central Trust Company, or in other depositaries which had been merged with that company, and were embittered against the defendant; and because the foreman, one of those depositors, had publicly declared his hostility to the defendant and charged him with fraud. This objection we find insufficient to support the plea. The grand jury, as has been observed, is not a judicial body; it is an accusing body, permitted to act upon knowledge obtained by its members from any source. Under the requirements of the statute law of the state, Code, art. 51, secs. 7 to 10, they are chosen with judgment and discretion with reference to their intelligence, sobriety, and integrity; and they are sworn to present no person for envy, hatred, malice, or ill will. But there are no statutory provisions in Maryland, as there are in some other states, prescribing additional cautions or qualifications, and we find no ground for imposing a requirement that they must be unprejudiced, as the objection demands. On the contrary, such a requirement would seem inconsistent with their freedom to accuse upon their own knowledge, for persons who come with knowledge sufficient to serve as a basis of indictment are likely to come with the conclusion and prejudice to which that knowledge leads. They must act upon their own convictions, after conferring secretly and without any interference; but they are not required to come without any prejudice. It has sometimes been held that a

direct pecuniary interest in a prosecution might serve to disqualify a grand juror, but there is seldom such a direct private interest involved in criminal prosecution; and none is involved here. In *State v. Brainerd*, 56 Vt. 532, it was objected that members of a grand jury which found an indictment on a charge of embezzlement from a trust company were disqualified because some of them were directly or through members of their families interested as depositors in the company, but the court, page 537 of 56 Vt., held that such jurors could not be said to be interested in the event of the prosecution, because they could neither gain nor lose by a conviction or acquittal of the accused. Possibly cases may be met with in which grand jurors would have such interest as would render them incompetent, but the mere prejudice that might result from the losses outlined in the present plea seems insufficient. This, we believe, is in accordance with the weight of authority elsewhere. *In re Tucker*, 8 Mass. 286; *People v. Lauder*, 82 Mich. 109, 46 N. W. 956; *State v. Sharp*, 110 N. C. 604, 14 S. E. 504; *Fooshee v. State*, 3 Okl. Cr. 666, 108 P. 554; *Joslyn v. People*, 67 Colo. 297, 184 P. 375; *Comm. v. Woodward*, 157 Mass. 516, 32 N. E. 939; *Koch v. State*, 32 Ohio St. 353. And see review of cases in notes, 28 L. R. A. 201, 4 Ann. Cas. 873, 874, Ann. Cas. 1912B, 738, 7 A. L. R. 345.

After the demurrer to the plea in abatement had been sustained, the defendant filed a demurrer to the indictment on the ground that it failed to allege specifically that the defendant's banking institution was actually insolvent; but the indictment was framed in the language of the statute which the accused was charged with having violated, and in Maryland this has been held sufficient. *Mincher v. State*, 66 Md. 227, 7 A. 451; *Curry v. State*, 117 Md. 587, 83 A. 1030; *Mulkern v. State*, 127 Md. 41, 96 A. 3; *Armacost v. State*, 133 Md. 289, 105 A. 147; *Bosco v. State*, 157 Md. 407, 146 A. 238; *State v. Lassotovich*, 162 Md. 150, 159 A. 362. The demurrer to the indictment was therefore properly overruled.

Refusal by the trial court to require from the state a bill of particulars of the charge is made another ground of error,

but in criminal cases the allowance of a bill of particulars is within the sound discretion of the trial court, and we find no reason to question the exercise of that discretion in this case. *Lanasa v. State,* 109 Md. 602, 71 A. 1058; *Simond v. State,* 127 Md. 29, 95 A. 1073.

At the trial which followed the disposal of these preliminary questions, the court permitted, against the objection of the defendant's counsel, the introduction of evidence that the deposit specified in the indictment had been accepted by a teller at the banking office in Ellciott City when the defendant was not present; and the defendant contends that this would not be evidence of acceptance by the defendant as charged. Manual acceptance, it is contended, is the act prohibited, and acceptance by a teller, unknown to the defendant, is not proof of manual acceptance by the defendant. This raises a question of construction of the statute with which this court has not had to deal heretofore, and examination of decisions in other states shows a difference of opinion on the meaning of similar provisions. *Michie, Banks and Banking,* 407; *State v. Mitchell,* 96 Miss. 259, 51 So. 4; *State v. Cramer,* 20 Idaho, 639, 119 P. 30; *People v. Munday,* 293 Ill. 191, 127 N. E. 364; *State v. Sattley,* 131 Mo. 464, 33 S. W. 41; *State v. Eifert,* 102 Iowa, 188, 65 N. W. 309, 71 N. W. 248; *Baker v. State,* 54 Wis. 376, 12 N. W. 12; *Carr v. State,* 104 Ala. 4, 16 So. 150; *McClure v. People,* 27 Colo. 358, 61 P. 612; *Morris v. State,* 102 Ark. 513, 145 S. W. 213; *Parrish v. Comm.,* 136 Ky. 77, 123 S. W. 339; *Ex parte Rickey,* 31 Nev. 82, 100 P. 134; *State v. Lewis,* 141 S. C. 207, 139 S. E. 368. The court concludes that the meaning and purpose of the Maryland statute are that, even though an officer does not manually accept the deposit, and is not present or otherwise in a position to know when the deposit is accepted over the counter, if he participates in keeping his bank open for acceptance of deposits when he knows it to be insolvent, he is guilty of the statutory crime. We defer for the present consideration of the meaning of insolvency and knowledge of insolvency under the statute. There are some difficulties in the way of this con-

struction. The statute applies its prohibition to "any officer, clerk or employee * * * who shall accept a deposit," etc. Employees and clerks could not be guilty of participating in receipt of deposits by keeping the bank open, but guilty only of manual acceptance, and the crime intended would as to them be so construed; and it may be argued that only one and the same crime is specified as that of which all the individuals mentioned might be guilty, officers, employees, and clerks alike, and if manual acceptance of deposits is the crime for employees and clerks, it is the crime intended for officers. Moreover, directors, who would ordinarily have control of the opening or closing of the bank, are not included, but, on the contrary, although included in an enumeration of individuals in a preceding clause of the statute, are omitted from this one; and it is argued that, if failing to close the bank against receipt of deposits were the crime intended, the directors who control the closing would be mentioned and made liable. But the construction that only manual acceptance is meant would seem to require omission of officers from its operation, for, while officers may in a few smaller communities manually take deposits in banks, the great majority of bank officers in the state have no connection with receipt of deposits except in keeping the banks open for it. Obviously, the statute means to hold officers liable for some act, and, as this is the only participation of which they would ordinarily be guilty, this would seem to be the participation meant to be reached.

It has been argued that guilt must be personal, and that there is no such thing as vicarious liability under the criminal law. This broad argument overlooks such liabilities as that of proprietors of saloons for sales of liquor to minors, even against the orders of the proprietors, that of a proprietor for a servant's sale of lottery tickets, and the old liability of steamboat owners for transportation of slaves even against express orders. *Carroll v. State*, 63 Md. 551, 3 A. 29; *Ford v. State*, 85 Md. 465, 478, 37 A. 172; *State v. Balto. & Susquehanna Steam Co.*, 13 Md. 181. There may be criminal liability for the act of an agent. But the

act for which an officer of a bank may be held liable under the present statute is not the act of an agent, but his own act, his own participation in receipt of deposits when the bank is insolvent to his knowledge. Only for individual action or inaction of the prohibited kind do we find such an officer to be liable. Specification of classes of persons who may be held, instead of mere prohibition of the act by whomsoever done, seems to manifest that intention, and it is unreasonable to suppose that the Legislature intended that absent, even disabled, persons within the class of officers, and who may know nothing, or if they know can do nothing, should nevertheless be criminally liable for acceptance of deposits at the bank when the bank's condition makes it improper. Personal participation is an essential of the crime. An officer cannot be held liable by virtue of his office or power only. There must be on his part some exercise of his will that the deposit be accepted, but this may be by keeping the institution open for that purpose. In accordance with these views it was proper for the court to receive evidence of the deposit at Ellicott City as that of a necessary fact in the case, and there was no error in it.

Evidence to support the judgment and good faith of the accused in respect to keeping the institution open was sought by a question to the deputy bank commissioner of the state which was excluded as immaterial; and the exclusion forms the subject of one of the exceptions. On the late afternoon and evening of September 1st, 1931, the day before the closing of the institution, and before the acceptance of the deposit mentioned in the indictment, a meeting was held in Baltimore, on the call of the governor of the state, to ascertain whether loans might be obtained to aid in keeping the institution open; and it was attended by the governor, the bank commissioner and his deputy, and by some leading Baltimore bankers. The meeting failed to accomplish anything to aid, and the bank commissioner directed the accused to return to Frederick, call a meeting of the directors of the institution, and place it in the hands of the commissioner as receiver. The directors were not convened until the next

day, and meanwhile the deposit specified in the indictment had been accepted at Ellicott City. The question asked was whether the deputy bank commissioner said, or heard any one else say, at that meeting, anything concerning the solvency of the bank. There had been evidence adduced that a year earlier, in September, 1930, Mr. Hospelhorn, the deputy, had made an examination of the institution and had not found any indication of insolvency; that another examination had been made by him in June, 1931; and that on August 21st, 1931, twelve days before the ultimate closing, he and the bank commissioner had a meeting with the banking committee of the institution, and still Mr. Hospelhorn expressed no opinion that the company was insolvent. The question excluded sought to bring this testimony down to the last conference on the bank's condition, and possibly to open an inquiry into the judgment of those present at the meeting, to show foundation and confirmation of the defendant's own judgment; and inasmuch as judgment is involved in fixing upon a time and condition when the officer is required to act, this is a question of the kind that should be permitted, and on a retrial the objection should not be sustained. The exclusion of the evidence would not, however, be alone sufficient to require a reversal of the present judgment.

Insolvency within the meaning of the statute, as this court construes it, is not always a fact to be ascertained by simple arithmetic, leaving no room for doubt or difference of opinion. "It is very rarely, indeed, that the financial situation of a corporation is so perfectly defined that it continues solvent up to a given instant, and is immediately thereafter insolvent. In almost all such cases there is a period of struggle, during which efforts are made to rescue the enterprise from threatened insolvency." *Reed v. Helois Carbide Specialty Co.,* 64 N. J. Eq. 231, 243, 53 A. 1057, 1062; *Hoagland v. U. S. Trust Co.,* 110 N. J. Eq. 489, 160 A. 662. The statute cannot, we think, be reasonably supposed to intend that at any moment, when there is perceived to be an unfavorable balance of liabilities and assets at market quotations, bank officers shall in every instance abandon all hope, make no

effort on behalf of the body of existing depositors, however great the chance or probability of success, and close. Action must be guided by reasonable expectations, looking to the interest of all who hold obligations of the company, and some effort to work out of temporarily embarrassing conditions must be contemplated. Acceptance of deposits when the bank is known to be insolvent must mean, we think, acceptance when there is no reasonable ground for expectation of repayment in ordinary course. And if that be correct, then any judgment of the meeting of bankers and others in Baltimore on the condition of the company might have been an important factor in the formation of reasonable judgment by the accused.

Exceptions were taken to a number of questions on behalf of the state for market and other values as of September 2nd, 1931, the date of the closing of the institution, but no reversible error is found in these respects. While evidence of values on a given date, and values of rentals and other items, may fall short of giving the full ground for decision on the question of insolvency under the statute, it does give facts relevant to that decision.

The overruling of a motion for a new trial is made the ground of an exception; but it is well settled that this court cannot review that action. *Anderson v. State,* 5 H. & J. 174; *Gallagher v. Kornblatt,* 149 Md. 304, 131 A. 450.

Finally, an exception was taken to the overruling of a motion in arrest of judgment. The motion was in part grounded upon objections raised during the trial and already considered, and also upon objections to the sufficiency and weight of evidence on which conviction had been based. No defects or errors apparent on the face of the record were suggested; and a motion in arrest of the judgment would lie only to correct errors of that description. It does not lie for review of the objections stated in this motion. *Myers v. State,* 137 Md. 482, 113 A. 87.

*Judgment reversed, and case remanded for further proceedings.*

ADKINS, J., filed a separate opinion as follows:

I agree that the judgment must be reversed for the reasons clearly and forcefully stated in the court's opinion. But I think there is a more fundamental reason. In my opinion, the statute, codified as section 58 of article 11, under which the indictment was found, was not intended to apply to an officer who did not participate in, or have knowledge of, the acceptance of the deposit. The court has found that the statute does not include directors, and with that I entirely agree. In such of the cases cited in the opinion as hold non-participating executive officers and directors responsible, the reason given is that they are responsible for the mangaement of the bank and for keeping it open. The reasoning is logical, because in all of them the statutes construed either expressly or by fair implication include directors. It is to me inconceivable that the Legislature meant to punish officers by reason of their managerial positions when it entirely omitted directors who are the managers. If it had meant to make keeping the bank open an offense it could easily have accomplished that by making criminally responsible any executive officer or director who, knowing a bank to be insolvent, should assent to its remaining open for business.

I cannot concur in the conclusion of the court that the Legislature must have meant to punish officers for participating in keeping banks open, knowing them to be insolvent, on the ground that "this is the only participation of which they would ordinarily be guilty." Of course the statute means to hold some officers liable for some act; but the act specified is the accepting of deposits in the conditions named, and the officer liable is the one who accepts them. The statement that "this (that is, keeping the bank open) is the only participation of which they (officers) would ordinarily be guilty" is based on the assumption that "the great majority of bank officers in the state have no connection with receipts of deposits except in keeping banks open for it." Clearly the court must be thinking only of executive officers. But it cannot, I think, properly be assumed that the Legislature

had such officers in mind. The statute does not in terms include all officers. In common parlance, and in the language understood by legislators, tellers and bookkeepers are "officers." "Teller" is so defined in Webster's dictionary, and in the Century he is described as a "functionary in a banking establishment," etc. Of course it is the business of tellers to receive deposits; and bookkeepers often perform that duty in the absence of the regular tellers. It seems to me an unwarranted assumption that the Legislature meant to include officers who do not receive deposits. Why should that be assumed when directors are excluded?

If it be urged that the construction of the statute worked out by the court is necessary for the protection of depositors, my answer is it is not the business of courts to legislate. As was said in *State v. Page,* 163 Md. 505, 513, 163 A. 493, 495, in an opinion by Judge Offutt: "While the courts may not by strained or narrow construction thwart the legislative will, neither will they, in the construction of a criminal statute, extend its scope to cases not plainly within the language used. *Healy v. State,* 115 Md. 377, 80 A. 1074."

In *Healy v. State, supra,* it was said: "Penal statutes shall be strictly construed, by which is meant that courts will not extend the punishment to cases not plainly within the language used." See, also, *Sea Gull Specialty Co. v. Snyder,* 151 Md. 78, 83, 134 A. 133, 134, where we said, through Judge Digges: "In determining the question before us, we should be confined to determining the true meaning of the language employed by the Legislature, and not allow the construction to be influenced by what, in our opinion, the Legislature should have said." And the court then was not construing a criminal statute, where greater strictness is required.