STATE OF MARYLAND *v.* JOSEPH A. AQUILLA

[No. 5, September Term, 1973.]

*Decided August 3, 1973.*

The cause was argued before ORTH, C. J., and THOMPSON and MENCHINE, JJ.

*George A. Eichhorn, III, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Milton B. Allen, State's Attorney for Baltimore City,* and *J. Carroll Holzer, Assistant State's Attorney for Baltimore City,* on the brief, for appellant.

*W. Lee Harrison* and *Cooper C. Graham* for appellee.

ORTH, C. J., delivered the opinion of the Court.

On 14 September 1970 the Grand Jurors for the State of Maryland, for the body of the City of Baltimore, returned two true bills against JOSEPH A. AQUILLA,[1] presenting in No. 5457 that he committed acts of misconduct during the conduct of his office of Clerk of the Municipal Court of Baltimore City, and in No. 5458 that he committed a larceny after trust. On 8 December 1972 Aquilla filed a motion to dismiss the indictments. The motion was heard in the Criminal Court of Baltimore on 18 December 1972 and on 18 January 1973 the court granted the motion. The State appealed. *State v. Hunter*, 10 Md. App. 300.

The court below granted the motion to dismiss the indictments because it found that Special Assistant State's Attorneys for Baltimore City were without authority for their participation in the examination of witnesses before the Grand Jury which returned the indictments.[2] The court erred.

The motion was presented below on an agreed statement of facts:[3]

"By letter dated October 21, 1969, Charles E. Moylan, Jr., then State's Attorney requested

---

1. In the record submitted to us the name of defendant-appellee is spelled "Aquilla" at times and "Acquilla" other times. The dockets are in the name "Acquilla." The presentments and indictments give the name as "Aquilla." An "Application and Recognizance" bears the signature "Joseph A. Aquilla."

2. The question whether Special Assistant State's Attorneys for Charles County could participate in the examination of witnesses before a grand jury was presented in *Maloney v. State*, 17 Md. App. 609. We did not reach the question, however, because we found that they were also Assistant Attorneys General and were, in any event, authorized to appear before the grand jury in that capacity.

3. In view of the ruling of the court below, three other grounds on which the motion was based were not reached. They were:

    (1) the offenses were barred by limitations;
    (2) the indictments were so vague and indefinite that Aquilla was unable to prepare a defense;
    (3) the indictments were invalid due to the unconstitutionality of the Special Grand Jury.

As they were not tried and decided below and not raised on appeal, they are not before us. Maryland Rule 1085.

a Supreme Bench to *deputize* certain attorneys for the purpose of permitting said attorneys to 'have access to the files, ... and to interview witnesses before the Grand Jury.' (Exhibit 1)[4] There were ten attorneys in all, one from each of the ten largest law firms in the city of Baltimore. The services of each special attorney were offered and accepted free of any charge to the city or State, and each committed himself for approximately five to eight hours per week for the duration of the investigation. Among the ten who were deputized were the following persons:

| | |
|---|---|
| Herbert Better | of Weinberg and Green |
| James Dausch | of Frank, Bernstein, Conaway and Goldman |
| William Hylton | of Semmes, Bowen and Semmes |
| Stanley Rohd | of Due, Whiteford, Taylor and Preston |
| John Carroll Byrnes | of Gordon, Feinblatt and Rothman |

None of the above attorneys at any time received any remuneration from the City of Baltimore or the State of Maryland for their services rendered during the course of the Special Grand Jury investigation. They received none of the usual and normal benefits from the City or the State customarily or by law provided an attorney duly sworn as assistant to the State's Attorney of Baltimore City. They were not answerable to the State's Attorney for the various amounts of time which they voluntarily offered to expend on their special duties. They were not answerable to the State's Attorney for any and all time spent on tasks not related to the Special Grand Jury investigation even though such other tasks accounted for the majority of their productive work schedule.

---

4. Appendix A hereof.

On November 10, 1969, a petition by Charles E. Moylan, Jr., then State's Attorney for Baltimore City, was submitted to the Supreme Bench of Baltimore City requesting the said court to convene a Special Grand Jury to investigate alleged irregularities in the Traffic Division of the Municipal Court of Baltimore. On the same date a court order issued authorizing the convention of a special grand jury. The aforementioned petition and order are attached hereto as exhibit 2.[5]

On November 13, 1969, the above named attorneys, except Mr. Hylton were sworn in as special assistant State's attorneys, but each was given the oath of office which all regular assistants are given. On November 17, 1969, Mr. Hylton was sworn in, in the same manner as the aforementioned.

During the course of the investigation several regular and permanent assistant State's attorneys were assigned to supervise the interviewing of witnesses, the perusal of all records and papers connected with the investigation, and the examination of witnesses actually appearing before the Grand Jury. The Special Assistants were primarily responsible for examining the files and interviewing witnesses prior to their testimony before the Grand Jury. The preliminary interviews were necessary to eliminate worthless knowledge or testimony and therefore conserve time and effort of the Special Grand Jury each time it sat. Everyone who testified before the Special Grand Jury gave his or her information to a Special Assistant first so that a determination could be made concerning the necessity for the witness to appear before the Grand Jury.

Approximately 280 different witnesses testified before the Special Grand Jury during the 62 sep-

---

5. Appendix B hereof.

arate days that the said Grand Jury was actually hearing testimony. Although the normal duties of the Special Assistants did not include taking witnesses into the Grand Jury, five Special Assistants did in fact participate in the examination of fifteen different witnesses during the course of six separate days. Mr. Dausch examined two witnesses and he appeared on two days. Mr. Better examined two and appeared on two days. Mr. Hylton examined four and appeared on three days. Mr. Byrnes examined one and appeared on one day. Mr. Rohd examined six and appeared on three days. During the six days in which the Special Assistants actively participated before the Special Grand Jury, the testimony and investigation pertained to wrongful conduct of various attorneys, bondsmen, court clerks and judges of the Municipal Court. The wrongful conduct included fixing tickets and specific persons were mentioned at times. On three of the six days referred to above, Mr. Aquilla was specifically mentioned and at times he was the focus of concern. On one of the three days when Mr. Aquilla was mentioned, Mr. Rohd personally examined four witnesses.

Mr. Rohd at the time was employed and on loan to the State's Attorney's Office by the law firm of Due, Whiteford, Taylor and Preston. Said law firm was composed of several attorneys among whom were W. Hamilton Whiteford, William B. Whiteford, and Richard C. Whiteford. Mr. Charles Whiteford at the time was employed by the Sun papers, and his articles on the alleged corruption of the Traffic Division of the Municipal Court were the impetus for the special investigation. Mr. Charles Whiteford is the brother of W. Hamilton Whiteford, and he is the uncle of William and Richard Whiteford.

No one was present during the actual deliberation of the Special Grand Jury except the sworn members of said body."

## I

The office of State's Attorney is constitutionally prescribed: "There shall be an Attorney for the State in each county, and the City of Baltimore, to be styled 'The State's Attorney', who shall be elected by the voters thereof, respectively . . . ." Constitution of Maryland, Art. V, § 7. "The State's Attorney shall perform such duties . . . as shall be prescribed by law . . . ." *Id.* § 9. In implementation of these constitutional provisions, Code, Art. 10, § 34 provides: "The State's attorney for each county and the City of Baltimore shall, in such county or city, prosecute and defend, on the part of the State, all cases in which the State may be interested." The office of State's Attorney, being unknown at common law, is possessed of no other powers than those prescribed by the constitutions and statutes of the State, *Kilgour v. Evening Star Co.*, 96 Md. 16, *Hawkins v. State*, 81 Md. 306, but these powers are nowhere enunciated and defined, *Wells v. Price*, 183 Md. 443, 446. The Court of Appeals said, however, that State's Attorneys are vested "with broad official discretion to institute and prosecute criminal causes . . . ." *Brack v. Wells*, 184 Md. 86, 90. We traced the history of the office of the State's Attorney in Maryland in footnote 5, pp. 305-307, *State v. Hunter, supra*, concluding that responsibility for prosecuting criminal cases at the trial level devolved upon the State's Attorney by reason of his constitutional mandate as implemented by statute. "According to the generally prevailing opinion, the prosecuting officer may, and it is his duty as well as his privilege to, attend on the grand jurors with matters on which they are to pass, aid in the examination of witnesses, and give such general instructions as they may require." 4 *Wharton's Criminal Law and Procedure*, § 1716 (1957).[6] We stated in *Maloney v. State, supra*, at 615, that we were in accord with this prevailing opinion, and applied it in determining that case, where, in the circumstances, the Attorney General was the

---

**6.** *Wharton* adds a caveat: "But he should not be present while the grand jury is deliberating on the evidence or is voting on a matter under investigation."

prosecuting officer. As a State's Attorney is charged by the Legislature to prosecute criminal cases, and as he is vested with broad official discretion to institute and prosecute such cases, it is implicit in the constitutional provisions as implemented by the statute, that a State's Attorney, as the prosecuting officer, has the right to attend on the grand jurors with matters on which they are to pass, aid in the examination of witnesses, and give such general instructions as they may require. As we observed in *Maloney*, at 615, without such concomitant authority to so present a case to a grand jury, the duty to initiate and prosecute a criminal action would be sterile indeed.

We think it evident that a State's Attorney generally may assign to his deputies and assistants the performance, subject to his discretion and control, of the duties required of him by law with respect to the institution and prosecution of criminal actions. Thus, the deputies and assistants may attend on the grand jurors at the assignment of the State's Attorney. This has been recognized by the Legislature. In authorizing from time to time the appointment of Deputy State's Attorneys and Assistant State's Attorneys for the various counties,[7] it has, as to certain counties, expressly provided that the deputies and assistants shall have the same legal powers as the State's Attorney to represent the State before grand juries. We consider this to be no more than an expression of what is implicit in Code, Art. 10, § 34. The fact that the power is not explicitly given to some counties does not mean that the Deputy State's Attorneys and Assistant State's Attorneys of those counties may not be assigned the duty by the State's Attorney of attending on the grand jurors and appearing in the trial of criminal proceedings.[8]

---

7. A county State's Attorney has the power to appoint such deputies and assistants as the General Assembly may from time to time authorize. Code, Art. 10, § 40. Deputy State's Attorneys and Assistant State's Attorneys for Baltimore City, however, are appointed pursuant to a constitutional provision. "[T]he State's Attorney for Baltimore City shall have the power to appoint a Deputy and such other Assistants as the Supreme Bench of Baltimore City may authorize or approve . . . ." Constitution of Maryland, Art. V, § 9.

8. It is apparent that legislation providing for the number and salary of

## II

Having determined that duly appointed Deputy State's Attorneys and Assistant State's Attorneys as well as State's Attorneys may attend on grand jurors, we consider the Assistant State's Attorneys whose authority to do so is here challenged. Although they were styled Special Assistant State's Attorneys, they took the oath of office which all regular Assistant State's Attorneys are given. We think they enjoyed a status sufficiently comparable with other Assistant State's Attorneys for Baltimore City to enable the State's Attorney to assign them the duty of attending on the grand jurors investigating the alleged irregularities in the Traffic Division of the former Municipal Court of Baltimore City. It is apparent that they were appointed by the State's Attorney for Baltimore City under the authorization and with the approval of the Supreme Bench of Baltimore City pursuant to the Maryland Constitution. In the letter from the State's Attorney seeking the authorization and approval of the Supreme Bench for the appointments, it was made clear that

---

Deputy State's Attorneys and Assistant State's Attorneys in the various counties is enacted as the need for them is demonstrated to the satisfaction of the Legislature. This is not always conducive to uniformity in the provisions. In Allegany County, for which only a Deputy is authorized, "in the absence of the State's Attorney", the Deputy "shall have the same legal powers as the State's Attorney to represent the State before grand juries and in the trial of criminal proceedings." Code, Art. 10, § 40 (b) (3). In Baltimore County, "the Deputy State's Attorneys and the Assistant State's Attorneys shall have the same legal powers as the State's Attorney to represent the State before grand juries and in the trial of criminal proceedings." Subsection (d) (5). There is a similar provision as to Calvert County, subsection (e); Cecil County, subsection (h) (3); Charles County, subsection (i); Dorchester County, subsection (j) (3); Frederick County, subsection (k) (2) and (5); Harford County, subsection (m) (2); Howard County, subsection (n) (3); Kent County, subsection (o) (2); Montgomery County, subsection (p) (3); Prince George's County, subsection (q) (4); Washington County, subsection (v) (4). Subsection (w) (4) provides as to Wicomico County: "Under the direction of the State's Attorney, the deputy State's attorney and any assistant State's attorneys shall present cases and perform such other acts and duties in the operation of the office as are necessary and proper." Subsection (x) (4) provides as to Worcester County that the deputy State's attorney and each assistant State's attorney "shall possess all the authority and power of the State's Attorney in the performance of the duties of that office." There is no provision as to duties of deputies and assistants with respect to Caroline County, subsection (f); Carroll County, subsection (g); Garrett County, subsection (l); Queen Anne's County, subsection (r); St. Mary's County, subsection (s); Somerset County, subsection (t); and Talbot County, subsection (u).

the duties of the Assistants would include interviewing witnesses before the Grand Jury. We think it immaterial with respect to their attendance on the grand jurors that they were not paid by the City or State for their services or that they did not spend full time on their prosecutorial duties and were not answerable to the State's Attorney for time spent on duties not assigned by him. As far as the constitutional and statutory provisions with respect to the office of State's Attorney are concerned, we think that the activities carried out by the Special Assistants before the Grand Jury were not proscribed.

### III

The court below was of the opinion that *Coblentz v. State,* 164 Md. 558 was dispositive of the motion to dismiss. We do not see *Coblentz* that way.

Emory L. Coblentz was convicted on a charge that, as president of a banking institution, he had accepted a deposit of money when the institution was, to his knowledge, insolvent. A plea in abatement to the indictment was filed. It alleged:

> "The Central Trust Company had purchased on June 30th, 1931, assets of the Washington Trust Company, situated in Ellicott City, and had assumed the liabilities to its depositors. On November 28th, 1931, after the Central Company had been taken in charge by the bank commissioner as receiver, a proceeding was filed by Jerome A. Loughran and others, as attorneys for the Washington Company and certain of its depositors and stockholders, seeking to have the transaction set aside and annulled upon a charge of fraud; that on March 2nd, 1932, a bill of complaint in equity was filed by Mr. Loughran and others, making charges substantially the same as those contained in the indictments returned on February 29th, 1932, two days earlier; that Mr. Loughran was private attorney of the Washington Company, and not a member of the grand jury, but was permitted to be with

the grand jury, while it was conducting its inquiry and investigation, by an illegal order of court appointing him (Mr. Loughran) 'special assistant counsel for the State of Maryland,' to aid in the inquiry and examination into the subject-matter of the indictments; and finally, that Mr. Loughran, privately employed as stated, did hear, see, and ascertain the proceedings of the grand jury in connection with the indictments, except at the time of the grand jury's vote, all to the prejudice and detriment of the defendant."

There was a demurrer to the plea on the grounds that the presence of the attorney under the circumstances described in the plea would not be sufficient to invalidate the indictment, and that the plea was filed too late. The demurrer was sustained. Coblentz was tried under the indictment and convicted. The Court of Appeals reversed the judgment.

On appeal the question here relevant was "the effect on an indictment of the presence with the grand jury, during their inquiry prior to taking their vote, of an attorney who represented plaintiffs in civil litigation against the banking institution." The Court of Appeals first concluded that the plea in abatement was properly filed and then found that it was error to sustain the demurrer to it.

As we construe the opinion of the Court, the primary reason for reversing the judgment was that the appointment of the lawyer as a "special assistant counsel for the State of Maryland" was illegal. It thought that two statutory provisions determined the legality of the order of appointment, Code, Art. 10, § 27 (now § 41), and Code, Art. 26, § 7 (now § 11). The first statute empowered a court to appoint an attorney to take the place of a state's attorney when necessary because of absence, sickness, resignation, or death of a state's attorney. It observed that "this section cannot be involved in the present case, because there was no absence, death, or disability of the state's attorney regularly serving, and it does not fit the description of the order passed." 164 Md. at 564. The second statute provided, as it

does now: "The circuit courts for the several counties and the Criminal Court of Baltimore may appoint assistant counsel for the State, to aid in the trial of criminal or other State cases in said courts, whenever in the judgment of the court in which any such case is pending public interest requires it." The Court opined that an appointment under the authority of this section "could give the appointee none of the power of a state's attorney to enter and be present in the room with the grand jury while they are investigating a case with a view to possible indictment." *Id.*, at 565. It thought that by the letter of the statute, such counsel could be appointed "only when the case is pending in the court, and according to the ordinary acceptation none is pending as yet when the grand jury is investigating a charge." *Id.*, at 566. The opinion then spelled out the nature of the grand jury, discussed its functions and the need to insure against publicity and interference in grand jury proceedings. But it is crystal clear that the nub of the decision was that the lawyer's appointment as a special assistant was deemed illegal, and therefore his presence before the grand jury was unauthorized. It is on this predicate that the Court, at 568, quoted with approval *Latham v. United States* (C.C.A.), 226 Fed. 420, 424:

> "The right of the citizen to an investigation by a grand jury pursuant to the law of the land is invaded by the participation of an unauthorized person in such proceedings, be that participation great or small. It is not necessary that participation should be corrupt, or that unfair means were used. If the person participating was unauthorized, it was unlawful."

It recognized, however, the propriety of the presence of the attorney for the State in its quote from *United States v. Edgerton* (D.C.), 80 Fed. 374, 375: "It is beyond question that no person, other than a witness undergoing examination, and the attorney for the government, can be present during the sessions of the grand jury." [9] 164 Md. at 568.

**9.** *Edgerton* noted that the case where the presence of bailiffs and stenographers have on occasions been temporarily present in the grand jury room are only apparent exceptions.

Like *Coblentz,* the appointments of the Special Assistants here were not under the authority of Code, Art. 10, § 41. And we agree with the *Coblentz* opinion that the authority of the Special Assistants to attend on the grand jurors may not stem from Code, Art. 26, § 11. The commanding difference, however, between *Coblentz* and the instant case is that the appointments of the Special Assistants here were legal under the Constitution of Maryland, Art. V, § 9, as made by the State's Attorney for Baltimore City with the authorization and approval of the Supreme Bench of Baltimore City. The appointments being constitutionally proper, the appointees were authorized, as we have indicated, to attend on the grand jurors as they did. Therefore, *Coblentz* is not dispositive of the case here reviewed.

## IV

The *Coblentz* opinion, in determining the question, pointed out that the case involved the added feature of a conflict of interest — the appointee having represented certain persons as plaintiffs in civil litigation against the insolvent bank of which Coblentz was president. The Court asserted that "[i]t was not necessary to plead and show actual injury from the conflict of interest" to make the appointee's presence in the grand jury room improper. The agreed statement of facts here before the court below included that on one of three days when Aquilla was mentioned before the grand jury, Stanley Rohd, one of those appointed a Special Assistant State's Attorney, personally examined four witnesses. The statement continued that Rohd was employed by the firm of Due, Whiteford, Taylor and Preston, that W. Hamilton Whiteford, William B. Whiteford, and Richard C. Whiteford were members of that firm, that the reporter whose articles on the alleged corruption of the Municipal Court, Traffic Division, were the impetus for the special investigation was Charles Whiteford, and that Charles Whiteford was the brother of W. Hamilton Whiteford, and the uncle of William and Richard Whiteford. Aquilla argues that this relationship presents a conflict of interest which *Coblentz* condemns.

In the circumstances here we see no conflict of interest, such as was contemplated in *Coblentz*. The connection between Rohd, as an employee of a firm which contained three members who were related to the reporter who wrote articles concerning Traffic Court corruption, is too attenuated to give rise to a conflict of interest sufficient to invalidate the indictments.

> *Order of 18 January 1973 dismissing the indictments reversed; case remanded for further proceedings; costs to be paid by appellee.*
> *Mandate to issue forthwith.*

## APPENDIX "A"

STATE'S ATTORNEY OF BALTIMORE CITY

204 COURT HOUSE

CHARLES E. MOYLAN, JR.
STATE'S ATTORNEY

BALTIMORE, MD. 21202

GEORGE J. HELINSKI
DEPUTY STATE'S ATTORNEY
E. TAYLOR BODEN
EXECUTIVE ASSISTANT STATE'S ATTORNEY

October 21, 1969

The Honorable Dulany Foster, Chief Judge,
and Honorable Members of the Supreme Bench
Court House
Baltimore, Maryland 21202

Honorable Sirs:

Some weeks ago Charles Whiteford of *The Baltimore Sun* informed this office, the Attorney General's Office of Maryland, and the President of the Baltimore City Bar Association of the investigation which he was conducting into the affairs of the Traffic Division of the Municipal Court of Baltimore City. As a result of that information, several conferences were held between Attorney General Burch, myself, and Messrs. Leroy Preston, David Gordon,

and Donald Rothman of the Bar Association. It was anticipated that the Baltimore City Grand Jury might well wish to look into the handling of traffic cases, particularly drunken driving cases, over the past few years. Yesterday a summons was issued from the Grand Jury directing this office to take into custody certain records from the Municipal Court.

Anticipating an analysis of these records, which number in the hundreds of thousands, and the interviewing of witnesses as a result of that analysis, which will probably run into the hundreds, Messrs. Preston, Gordon, and Rothman called a meeting of representatives of ten of the largest law firms in the City of Baltimore. All of those firms agreed to make available to the State's Attorney's Office of Baltimore City an experienced and diligent associate from the firm. These services are being offered to us free of any charge and for a time commitment of roughly five to eight hours per week per man for the duration of the investigation.

In order to permit these attorneys to have access to the files which are now in the legal custody of the Grand Jury and to interview witnesses before the Grand Jury, I am requesting this Honorable Bench to deputize the following persons as Special Assistant State's Attorneys for Baltimore City for this particular investigation:

Barry Bach of the firm of Smith, Somerville & Case

Herbert Better of the firm of Weinberg & Green

Paul L. Betz of the firm of Buckmaster, White, Mindel & Clarke

John Carroll Byrnes of the firm of Gordon, Feinblatt & Rothman

James Dausch of the firm of Frank, Bernstein, Conaway & Goldman

David R. Eaton of the firm of Ober, Grimes & Shriver

502

William A. Hylton, Jr. of the firm of Semmes, Bowen & Semmes

John Henry Lewin, Jr. of the firm of Venable, Baetjer & Howard

Stanley B. Rohd of the firm of Due, Whiteford, Taylor & Preston

Donald E. Sharpe of the firm of Piper and Marbury

Respectfully yours,

*Charles E. Moylan, Jr.*

Charles E. Moylan, Jr.
State's Attorney

CEMjr:ib

## APPENDIX "B"

| | | |
|---|---|---|
| | * | |
| IN RE: | * | IN THE |
| CALLING A SPECIAL | * | CRIMINAL COURT |
| INVESTIGATIVE GRAND JURY | * | OF |
| | * | BALTIMORE |
| | * | |

\* \* \* \* \* \* \* \* \*

### PETITION

Now comes Charles E. Moylan, Jr., State's Attorney for the City of Baltimore, and petitions this Honorable Court to convene a special investigative Grand Jury for the purposes of investigating conditions in the Traffic Division of the Municipal Court of Baltimore City and of investigating the structure of the organized gambling syndicate in the City of Baltimore and its possible tie-in to both bail bondsmen and attorneys operating in this City and its possible tie-in to certain governmental officials.

For reasons in support of this Petition, the State's Attorney here alleges that both of these investigations will probably require the calling of several hundred witnesses

before the Grand Jury and that it appears extremely unlikely that this number of witnesses could be taken before the regular Grand Jury for the September, 1969 Term because of its crowded schedule in hearing routine cases and that it appears extremely unlikely, in any event, that the investigations could be completed before the expiration of the term of the September, 1969 Grand Jury.

CHARLES E. MOYLAN, JR.
STATE'S ATTORNEY FOR BALTIMORE CITY
Petition submitted this tenth day of November, 1969.

Exhibit 2

|                              |   |                 |
|------------------------------|---|-----------------|
| IN RE:                       | * | IN THE          |
| CALLING A SPECIAL            | * | CRIMINAL COURT  |
| INVESTIGATIVE GRAND JURY     | * | OF              |
|                              | * | BALTIMORE       |
|                              | * |                 |

\* \* \* \* \* \* \* \* \*

### ORDER

Upon the advice of the State's Attorney of Baltimore City that a special investigative Grand Jury should be convened to investigate conditions in the Traffic Division of the Municipal Court of Baltimore City and the ramifications of the organized crime syndicate in Baltimore City and its tie-in to certain bail bondsmen, attorneys, and possibly governmental officials and that the number of witnesses to be called in these investigations makes it improbable that the regular Grand Jury for the September, 1969 Term could complete these investigations,

It is this tenth day of November, 1969, by the Judges of the Supreme Bench of Baltimore City, sitting as the Criminal Court of Baltimore, pursuant to the provisions of Section 262B of the Charter and Public Local Laws of

504

Baltimore City, ORDERED that a special Grand Jury be convened for purposes of conducting the above-mentioned investigations and returning appropriate indictments pursuant to such investigations.