## STATE OF MARYLAND *v.* RALPH E. ENSOR AND CHARLES EDWARD PHELPS COMPTON

[No. 1087, September Term, 1974.]

*Decided July 28, 1975.*

The cause was argued before POWERS, GILBERT and MELVIN, JJ.

*Clarence W. Sharp, Assistant Attorney General* and *Chief, Criminal Division,* with whom were *Francis B. Burch, Attorney General, Milton B. Allen, State's Attorney for Baltimore City,* and *Mark A. Van Bavel, Assistant State's Attorney for Baltimore City,* on the brief, for appellant and cross-appellee.

*Joseph H. H. Kaplan* and *Paul F. Strain,* with whom was *Elizabeth H. Trimble,* on the brief, for appellee and cross-appellant Ralph E. Ensor. *Arnold M. Weiner,* with whom was *Francis Brocato* on the brief, for appellee and cross-appellant Charles Edward Phelps Compton.

POWERS, J., delivered the opinion of the Court.

This appeal by the State brings up for review an order entered by Judge J. Harold Grady in the Criminal Court of Baltimore dismissing a series of indictments against the appellees.

The grand jury of Baltimore City, on 29 March 1974, returned six indictments each against Ralph E. Ensor and Charles Edward Phelps Compton,[1] charging acts of forgery and attempts to obtain money under false pretenses. One of

1. Two of the indictments against Compton name him as C. E. Phelps Compton.

the total of thirteen indictments charged both men with conspiracy to violate the false pretense laws. The charges arose out of alleged alterations made in change orders in connection with State construction contracts.

A motion to suppress certain evidence and a motion to dismiss all of the indictments were filed by the defendants below. After full evidentiary hearings on both motions, Judge Grady filed a memorandum and order granting, in part, the motion of the defendants for suppression, and filed a memorandum and order dismissing all of the indictments. Both orders were dated 6 November, and both were filed on 7 November 1974.

The State filed an appeal from both orders of the court. The appellees, in their brief, urge that the order of the trial judge dismissing the indictments was correct, and further argue, not only that the order of the trial judge granting their motion to suppress evidence was correct, but that the suppression order is not reviewable in this appeal. The defendants below filed a cross appeal, asserting error in certain findings and conclusions of the judge which were adverse to them. In its brief as cross appellee, the State moved to dismiss the cross appeal on the ground that the cross appellants' brief raises issues not raised or decided below, and because it refers to facts which are not part of the record on appeal.

We are persuaded that the order dismissing the indictments was correct and must be affirmed. This view of the case makes it unnecessary to consider or rule upon any other issues raised.

The entire case turns on whether there was participation of an unauthorized person in the proceedings of the grand jury which returned the indictments. There can be no doubt that it is the law in Maryland that such participation invalidates an indictment or indictments returned by the grand jury in those proceedings. Applicability of that law has been considered in two recent decisions of this Court, *Maloney v. State,* 17 Md. App. 609, 304 A. 2d 260, *cert. denied,* 269 Md. 761, 762, 767 (1973), and *State v. Aquilla,* 18 Md. App. 487, 309 A. 2d 44, *cert. denied,* 269 Md. 755 (1973).

In *Maloney* there were motions to dismiss the indictments, grounded upon the appearance of two Assistant Attorneys General before the grand jury of Charles County which returned the indictments. In our opinion in that case Chief Judge Orth, speaking for the Court, said, at 614-16:

"The powers and duties of the Attorney General prescribed in Art. V, § 3 of the Constitution of Maryland include that ' * * * when required by the Governor * * *, he shall aid any State's Attorney in prosecuting any suit or action brought by the State in any Court of this State, and he shall commence and prosecute or defend any suit or action in any of said Courts, on the part of the State, which * * * the Governor, acting according to law, shall direct to be commenced, prosecuted or defended * * *.' The Governor, acting explicitly under this constitutional authority, directed the Attorney General, by a written, definitive request, to commence and prosecute any action appropriate to the matter of the alleged overpayment in State and County funds to school bus contractors in Charles County, and to aid the State's Attorney for Charles County in any such action brought by the State. It is apparent that the investigation conducted by the Attorney General, through the two assistants, indicated that crimes had been committed. We find it to be clearly within the ambit of the constitutional provision that the authority of the Attorney General to 'commence' an action includes his presence to attend the grand jury to aid in the examination of witnesses and advise on questions of law. Without this concomitant authority, the mandate to 'commence and prosecute' any action which the Governor shall direct 'to be commenced and prosecuted' would be sterile indeed. We refuse to construe the constitutional provisions requiring the Attorney General to commence and prosecute an action so narrowly as to preclude him from presenting the case to a grand jury. Under the

constitutional provisions the Attorney General became the prosecuting officer in the cases before us. We are in accord with the generally prevailing opinion that the prosecuting officer may, and it is his duty as well as his privilege, attend on the grand jurors with matters on which they are to pass, aid in the examination of witnesses, and give such general instructions as they may require, without, however, being present while the grand jury is deliberating on the evidence or voting on a matter under investigation. 4 *Wharton's Criminal Law and Procedure*, § 1716 (1957). See *Grand Jury*, 38 Am. Jur. 2d §§ 34-35; *People v. Zara*, 255 N.Y.S.2d 43 (1964). Because the Attorney General was authorized to so appear before the grand jurors, Borgerding and Eichhorn could so appear. As we have concluded that the appearance of the Assistant Attorneys General before the Grand Jury for Charles County was authorized, their presence and participation had no adverse effect on the indictments returned. We hold that the court below did not err in denying the motions to dismiss the indictments.

"Both of the Assistant Attorneys General, before attending the grand jurors, were appointed Special Assistant State's Attorneys for Charles County and were administered the oath of that office. In view of our holding that their appearance before the Grand Jury as Assistant Attorneys General was authorized, we have no need to reach the question whether they were also so authorized in the capacity of Special Assistant State's Attorneys. We take the view that appointments of them as Special Assistant State's Attorneys were immaterial, and did not, in any event, render their appearance as Assistant Attorneys General improper."

In *State v. Aquilla, supra,* we were called upon to consider the effect upon indictments returned by the grand jury of

Baltimore City, of appearances before the grand jury by individuals whose sole authority to appear was derived from their having been appointed and sworn in as unpaid Special Assistant State's Attorneys for Baltimore City. The Constitution of Maryland, Art. V, § 9, contains the special provision, not applicable in the counties, that " * * * the State's Attorney for Baltimore City shall have the power to appoint a Deputy and such other Assistants as the Supreme Bench of Baltimore City may authorize or approve * * *." In that case, we said, at 494:

"We think it evident that a State's Attorney generally may assign to his deputies and assistants the performance, subject to his discretion and control, of the duties required of him by law with respect to the institution and prosecution of criminal actions. Thus, the deputies and assistants may attend on the grand jurors at the assignment of the State's Attorney."

We further said, at 495-96:

"Having determined that duly appointed Deputy State's Attorneys and Assistant State's Attorneys as well as State's Attorneys may attend on grand jurors, we consider the Assistant State's Attorneys whose authority to do so is here challenged. Although they were styled Special Assistant State's Attorneys, they took the oath of office which all regular Assistant State's Attorneys are given. We think they enjoyed a status sufficiently comparable with other Assistant State's Attorneys for Baltimore City to enable the State's Attorney to assign them the duty of attending on the grand jurors investigating the alleged irregularities in the Traffic Division of the former Municipal Court of Baltimore City. It is apparent that they were appointed by the State's Attorney for Baltimore City under the authorization and with the approval of the Supreme Bench of Baltimore City pursuant to the Maryland Constitution. In the letter from the

State's Attorney seeking the authorization and approval of the Supreme Bench for the appointments, it was made clear that the duties of the Assistants would include interviewing witnesses before the Grand Jury. We think it immaterial with respect to their attendance on the grand jurors that they were not paid by the City or State for their services or that they did not spend full time on their prosecutorial duties and were not answerable to the State's Attorney for time spent on duties not assigned by him. As far as the constitutional and statutory provisions with respect to the office of State's Attorney are concerned, we think that the activities carried out by the Special Assistants before the Grand Jury were not proscribed."

The lower court order dismissing the indictments in *Aquilla,* reversed by us on appeal, had been required, as the trial judge saw it, by the case of *Coblentz v. State,* 164 Md. 558, 166 A. 45 (1933). In the opinion for this Court in *Aquilla* Chief Judge Orth, speaking of *Coblentz,* said, at 498:

"But it is crystal clear that the nub of the decision was that the lawyer's appointment as a special assistant was deemed illegal, and therefore his presence before the grand jury was unauthorized. It is on this predicate that the Court, at [164 Md.] 568, quoted with approval *Latham v. United States* (C.C.A.), 226 Fed. 420, 424:

'The right of the citizen to an investigation by a grand jury pursuant to the law of the land is invaded by the participation of an unauthorized person in such proceedings, be that participation great or small. It is not necessary that participation should be corrupt, or that unfair means were used. If the person participating was unauthorized, it was unlawful.' "

In his memorandum and order dismissing the indictments in the present case Judge Grady said:

> "The defendants' First Consolidated Motion to Dismiss Indictments alleges as its first basis that an unauthorized person, Arrie W. Davis, Esquire, appeared before the Grand Jury and assisted in the presentation of the evidence which resulted in the above captioned indictments. The following facts relevant to the Motion are not in dispute. The indictments against the defendants were returned by the Grand Jury for Baltimore City on March 29, 1974. Evidence leading to these indictments was presented to the Grand Jury at various times starting on February 1, 1974. Mr. Davis appeared before the Grand Jury during the presentation of this evidence on February 1, 1974, and on several other occasions before March 29, 1974. Before, during and after the period of February 1, 1974, to March 29, 1974, Mr. Davis was an Assistant Attorney General of Maryland. The Attorney General of Maryland was not directed by the Governor of Maryland to assist the State's Attorney for Baltimore City in prosecuting any of the matters which are the subject of the indictments in question. On February 1, 1974, before a Judge of the Criminal Court of Baltimore and before his first Grand Jury appearance Mr. Davis was administered the oath of office given an Assistant State's Attorney in Baltimore City and was sworn in as a Special Assistant State's Attorney. There is no claim that Mr. Davis was present during any deliberations or voting by the Grand Jury. There is no claim that Mr. Davis's presence before the Grand Jury resulted in any actual prejudice to the defendants."

Judge Grady further said:

> "In *Maloney* the Assistant Attorneys General in question before attending the Grand Jury had also

been appointed Special Assistant State's Attorneys. In *Maloney* the court pointed out that since the presence before the Grand Jury of the prosecutors in question was authorized under the Constitution, Article V, Section 3, there was no need to reach the question whether they were also so authorized in the capacity of Special Assistant State's Attorneys.

"The instant case reaches the question reserved in *Maloney*. The State concedes that Article V, Section 3, of the Constitution was not complied with and that Mr. Davis was not authorized to appear before the Grand Jury in his capacity as an Assistant Attorney General. The State contends that Mr. Davis was duly appointed a Special Assistant State's Attorney for the City of Baltimore in accordance with the Constitution, Article V, Section 9, and consequently in that capacity his appearance before the Grand Jury was authorized. It is clear that Mr. Davis did not cease to be an Assistant Attorney General upon his becoming a Special Assistant State's Attorney. Assuming arguendo the validity of his appointment as a Special Assistant State's Attorney when Mr. Davis appeared before the Grand Jury, he was in fact holding two offices — Assistant Attorney General and Special Assistant State's Attorney. The situation here presented then raises the question of whether the presence of a single person before the Grand Jury can be both authorized and unauthorized at one and the same time."

\* \* \*

"The State's Attorney under this provision [Article V, Section 9] has the general power to appoint as an assistant prosecutor any person whom he deems qualified and upon appointment his assistant may then attend the Grand Jury. However, in my view, if the State's Attorney selects as an assistant prosecutor an Assistant Attorney General whose

prosecutorial powers are already limited by a specific constitutional provision (Article V, Section 3), then the specific limitation of an Assistant Attorney General as a prosecutor, must take precedence over the general prosecutorial authority vested in that appointee by virtue of his becoming an Assistant State's Attorney. It is conceded that Mr. Davis as an Assistant Attorney General had not been given the prosecutorial authority required for one in his office under Article V, Section 3.

"I conclude that Mr. Davis's acquisition of general prosecutorial authority as an Assistant State's Attorney did not validate his presence before the Grand Jury which was considering the indictments against these defendants. Consequently, under the inflexible rule adopted in *Coblentz* the Defendants' Motion to Dismiss the Indictments must be granted."

Although we affirm the order dismissing the indictments for the same basic reason that Judge Grady passed the order — participation of an unauthorized person in the proceedings of the grand jury, we do not get there by the same route. Judge Grady assumed, *arguendo*, that Mr. Davis lawfully qualified as an Assistant State's Attorney, but reasoned that because Mr. Davis was also an Assistant Attorney General, and was not qualified *in that capacity* to be present with the grand jury, that lack of qualification nullified his lawful authorization as an Assistant State's Attorney.

After concluding that the indictments must be dismissed, Judge Grady expressed the opinion that Mr. Davis did lawfully qualify as an Assistant State's Attorney.

In our opinion, the facts do not show that Mr. Davis qualified as an Assistant State's Attorney. The facts show only that earlier in the first day of his participation in the proceedings of the grand jury, Mr. Davis appeared before a single judge of the Supreme Bench and took an oath of office as an Assistant State's Attorney. The oath was a nullity,

unless his appointment had first been approved as required by the Constitution, Art. V, § 9. There is nothing in the record to show that his appointment was approved by the Supreme Bench of Baltimore City, either as a specific individual, or as an authorized position on the staff of the State's Attorney. Action by the Supreme Bench was required — action by a single member did not suffice.

Under the Constitution Mr. Davis could have been authorized to participate in the proceedings of the grand jury of Baltimore City, either as an Assistant Attorney General or as an Assistant State's Attorney. Qualification as either would have been enough. Authorization in one capacity would not be nullified by lack of authorization in the other. But on the facts in this case he had no authority in any capacity. His participation invalidated the indictments.

The right of the State to appeal is limited by Code, Courts Art., § 12-302 (c) to an appeal from the final judgment granting the motion to dismiss the indictments. The State's specification that it was appealing also from the order granting the motion to suppress evidence was superfluous. That order was interlocutory, and under Maryland Rule 1087, is open to review on an appeal from the final judgment.

Both *State v. Siegel,* 13 Md. App. 444, 285 A. 2d 671 (1971), *aff'd.,* 266 Md. 256, 292 A. 2d 86 (1972), and *State v. Lohss and Sprenkle,* 19 Md. App. 489, 313 A. 2d 87 (1973), *rev'd.* on other grounds, *Lohss and Sprenkle v. State,* 272 Md. 113, 321 A. 2d 534 (1974), involved appeals by the State from final judgments dismissing indictments in cases in which interlocutory orders had suppressed certain evidence. We expressed the view that such interlocutory orders were open to review when the final judgment was properly before us on appeal.

It is correct to say that the suppression order is *not appealable,* but it is equally correct to say that it *is reviewable* on a proper appeal from a final judgment dismissing the indictments. We note that in *Lohss and Sprenkle v. State, supra,* the Court of Appeals, reversing the

ruling of this Court, held that the State, in agreeing to the dismissals of the indictments in the trial court, had abandoned its prosecution, and had lost its right of appeal. The Court of Appeals also said, at 118:

"To be sure, as the Court of Special Appeals noted, if that court did possess jurisdiction under § 14, [now Courts Art., § 12-302 (c)] it could properly review the trial court ruling on the pretrial motion to suppress to the same extent that it might have reached any other interlocutory order under Maryland Rule 1087."

Appellees argue that for the suppression order to be reviewable in this appeal, the basis of the dismissal of the indictments must be inextricably intertwined with the basis of the suppression order. They point to a footnote in *State v. Siegel, supra,* 13 Md. App. at 471. It is perhaps more accurate to say that when a question is preserved, reviewable, and argued on appeal, it will be decided if there is a need to decide it, and it will not be decided if there is no need to do so. In the present case, if a reversal of the suppression order would require reversal of the order dismissing the indictments, we would decide whether the suppression order was correct. Also, if the order dismissing the indictments were to be reversed, for whatever reason, and the case remanded for trial, there would be a need to decide whether the suppression order was correct.

But a review of Judge Grady's interlocutory suppression order in this case would be fruitless. Whether the order was right or wrong can be of no more than academic interest, and is irrelevant to our decision. The indictments have been dismissed, for a reason totally unrelated to the lawfulness of the seizure of evidence. That dismissal ends the case, and we affirm it for the reasons given.

We do not rule upon the correctness of the suppression order. The cross appeal is likewise moot, and will be dismissed. The State's motion to dismiss the cross appeal

falls with it. The motion of the appellees to dismiss the State's appeal must be denied.

> *Motion to dismiss appeal denied.*
> *Motion to dismiss cross appeal denied.*
> *Order filed 7 November 1974 dismissing indictments affirmed.*
> *Cross appeal dismissed.*
> *Costs in the appeal to be paid by the Mayor and City Council of Baltimore.*
> *Costs in the cross appeal to be paid by cross appellants.*